UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **CRYSTAL A. F.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )   Case No. 4:21-CV-317-CDL |
| | ) |
| **KILOLO KIJAKAZI,** | ) |
| **Acting Commissioner of the** | ) |
| **Social Security Administration,** | ) |
| | ) |
| **Defendant.** | ) |

**OPINION AND ORDER**

Plaintiff seeks judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying Social Security disability benefits. The parties have consented to proceed before a United States Magistrate Judge in accordance with 28 U.S.C. § 636(c)(1), (2). For the reasons set forth below, the Court **reverses** the Commissioner's decision denying benefits and **remands** the case for further proceedings.

**I.    Standard of Review**

The Social Security Act (Act) provides disability insurance benefits to qualifying individuals who have a physical or mental disability. *See* 42 U.S.C. § 423. The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 423(d)(1)(A).

Judicial review of a Commissioner's disability determination "'is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence.'" *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (citing *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014)). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005)); *see also Biestek v. Berryhill*, --- U.S. ---, 139 S. Ct. 1148, 1154 (2019). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Noreja*, 952 F.3d at 1178 (quoting *Grogan*, 399 F.3d at 1261-62).

So long as supported by substantial evidence, the agency's factual findings are "conclusive." *Biestek*, 139 S. Ct. at 1152 (quoting 42 U.S.C. § 405(g)). Thus, the court may not reweigh the evidence or substitute its judgment for that of the agency. *Noreja*, 952 F.3d at 1178.

## II. Procedural History

The plaintiff filed a Title XVI application for supplemental security income on May 2, 2019. (R. 222). The plaintiff alleges she is disabled due to spine disorders, strokes, asthma, bipolar disorder, depression, anxiety disorder, and issues being around other people. (R. 72, 75-76). The plaintiff was 35 years old on the alleged disability onset date of December 27, 2018. (R. 72). Prior to the onset date, the plaintiff worked as a hospital cleaner and personal care-aide. (R. 49, 50). The Commissioner denied the plaintiff's

application on initial review and on reconsideration. (R. 131-133, 135-139). The plaintiff then requested a hearing before an Administrative Law Judge (ALJ). (R. 140).

The ALJ held a telephonic hearing on September 3, 2020, during which the plaintiff was represented by counsel. (R. 35-70). The plaintiff and a vocational expert (VE) testified at the hearing. *Id.* During the hearing, the plaintiff's counsel informed the ALJ that the plaintiff underwent a consultative psychological examination with Minor Gordon, Ph.D. in February 2017, during the adjudication of a prior social security claim. (R. 42). According to the plaintiff's counsel, the evaluation revealed that she has a full-scale IQ of 69, and the examining psychologist diagnosed the plaintiff with mild mental retardation. (R. 42). The plaintiff's counsel requested the ALJ to order a consultative psychological evaluation with IQ testing for this file. *Id*. Her counsel also asked the ALJ to include the February 2017 evaluation in the record. *Id*. The ALJ took these requests under advisement. (R. 42-43). However, the ALJ ultimately denied both requests. (*See* R. 17). On October 21, 2020, the ALJ issued a decision denying benefits. (R. 13).

On June 4, 2021, the Appeals Council denied the plaintiff's request for review, which rendered the ALJ's decision the final decision of the Commissioner. (R. 1-6). The plaintiff filed a timely appeal. (*See* Doc. 2). Accordingly, the Court has jurisdiction to review the ALJ's October 21, 2020, decision under 42 U.S.C. § 405(g).

## III.   The ALJ's Decision

The Commissioner uses a five-step, sequential process to determine whether a claimant is disabled and, therefore, entitled to benefits. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). A finding that the claimant is disabled or is not disabled at any step ends the analysis. *See id.*;

*see also Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)). The claimant bears the burden on steps one through four. *Lax*, 489 F.3d at 1084.

At step one, the claimant must demonstrate that she is not engaged in any substantial gainful activity. *See Lax*, 489 F.3d at 1084. Here, the ALJ determined that the plaintiff did not engage in substantial gainful activity from her application date. (R. 19).

At step two, the claimant must establish an impairment or combination of impairments that is severe. *See Lax*, 489 F.3d at 1084. Here, the ALJ found that the plaintiff has the severe impairments of degenerative disc disease, obesity, asthma, depressive disorder, anxiety disorder, and posttraumatic stress disorder (PTSD). (R. 19). The ALJ also discussed the plaintiff's other alleged impairments, including carpal tunnel syndrome, status post carpal tunnel release, and migraines; however, none were found to be severe. (R. 19). The ALJ noted that state agency medical consultants had identified borderline intellectual functioning as a severe impairment. (R. 27). However, the ALJ concluded that there was no support for this finding in the record before her, noting that the consultants had "referred to an older consultative examination that was considered in the previous ALJ decision and the report is not in the current file." *Id*.

At step three, the ALJ determines whether the claimant's severe impairment or impairments is equivalent to one that is listed in Appendix 1 of the regulation, which the Commissioner "acknowledges are so severe as to preclude substantial gainful activity." *Williams*, 844 F.2d at 751 (internal quotation and citation omitted); *see* 20 C.F.R. §§ 404.1520(d); 20 C.F.R. Part 404, subpt. P, app'x 1 (Listings). Here, the ALJ found that the

plaintiff's impairments do not meet or equal the criteria for any Listing, specifically noting Listings 1.02 (major dysfunction of a joint), 1.04 (disorders of the spine), 3.03 (asthma), 11.04 (vascular insult to the brain (stroke)), 12.04 (depressive, bipolar, and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), 12.15 (trauma and stressor-related disorders), SSR 19-2p (obesity), and SSR 19-4p (headache disorders). (R. 20-21).

At step four, the claimant must show that her impairment or combination of impairments prevents her from performing work she has performed in the past. The ALJ first determines the claimant's residual functional capacity (RFC) based on all the relevant medical and other evidence. 20 C.F.R. § 404.1520(e); *see also Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). The ALJ next determines the physical and mental demands of the claimant's past relevant work. *Winfrey*, 92 F.3d at 1023 (citing 20 C.F.R. § 404.1520(e)). Finally, the ALJ determines whether the RFC from phase one allows the claimant to meet the job demands found in phase two. *Id.*

Here, the ALJ determined that the plaintiff has the RFC:

to lift, carry, push or pull up to 10 pounds frequently and 20 pounds occasionally. She is able to sit up to 6 hours in a 8-hour workday and is able to stand and/or walk up to 6 hours in an 8-hour workday. The need to change positions can be accommodated by the 15-minute morning and afternoon break and 30 minute lunch period. The claimant is able to occasionally climb ramps or stairs, but the job should not involve climbing ladders, ropes or scaffolds. The claimant is able to frequently stoop, kneel, crouch, or crawl. The job should not involve concentrated exposure to dust, odors, fumes or pulmonary irritants. The claimant is able to understand, remember, and perform basic tasks of 1-2 steps consistent with Specific Vocational Profile (SVP) 1 and SVP 2 work in a familiar setting, with routine supervision. She is able to sustain the mental demands associated with performing basic tasks of 1-2 steps in a familiar setting throughout an ordinary workday and

> workweek and is able to sustain attention and concentration for up to 2 hours at [a] time when performing basic tasks of 1-2 steps in a familiar setting. The claimant is able to interact with supervisors as needed to receive work instructions and is able to work in close proximity to co-workers but the job should not involve close communication or cooperation with co-workers in order to complete work tasks. The job should not involve interacting with the general public. The claimant is able to adapt to a stable work setting that does not involve frequent or rapid changes.

(R. 21). The ALJ found that the plaintiff was not capable of performing any past relevant work. (R. 27). However, citing the VE's testimony, the ALJ found that the plaintiff could perform alternative jobs existing in significant numbers in the national economy. (R. 28). These alternative jobs include sewing machine operator (light exertion, unskilled, SVP 2, Dictionary of Occupational Titles (DOT) # 786.685-030; 32,000 positions in the national economy), power screwdriver operator (light exertion, unskilled, SVP 2, DOT # 699.865-026; 328,000 positions in the national economy), and merchandise marker (light exertion, unskilled, SVP 2, DOT # 209.587-034; 129,000 positions in the national economy). *Id*. As such, the ALJ found the plaintiff not disabled at step five. (R. 28-29).

**IV.   Discussion**

The plaintiff argues that the ALJ failed to adequately develop the record at step two of the sequential evaluation by denying her request for a consultative evaluation with IQ testing. In the alternative, the plaintiff argues that the ALJ erred by not including the February 2017 evaluation and IQ test results in the record. The plaintiff also alleges that the ALJ failed to identify and resolve conflicts between the DOT and the VE's testimony at step five of the sequential evaluation.

As discussed above, the plaintiff's counsel informed the ALJ of Dr. Gordon's February 2017 consultative psychological evaluation of the plaintiff. (R. 42). Specifically, the plaintiff's counsel stated that the February 2017 evaluation revealed the plaintiff has a full-scale IQ of 69. *Id*. In addition, Dr. Gordon diagnosed her with mild mental retardation. *Id*. The plaintiff's counsel requested the ALJ to order a consultative evaluation with IQ testing for the current record or, alternatively, to add the February 2017 evaluation to the record. (R. 42, 43). However, the ALJ did not order a consultative psychological evaluation prior to her October 21, 2020, decision.

In her decision, the ALJ explained that "[d]ue to the COVID-19 Pandemic, SSA has directed that no consultative examinations that require testing be scheduled at the hearing. For this reason, the request is denied." (R. 17). The ALJ also declined the plaintiff's request for the prior consultative evaluation to be included in the record. *Id*. The ALJ explained:

> The representative also requested that a prior consultative examination be exhibited. This examination was considered in connection with a prior claim that was decided by Judge Engel on December 26, 2018 (Exhibit B5A) and not appealed. The report was performed on February 8, 2017. The alleged onset here is December 27, 2018, making the consultative examination report 1 year and 10 months prior to the alleged onset date herein. For these reasons, the request is denied.

*Id*.

It is well-settled that an ALJ has broad latitude in deciding whether to order a consultative examination. *Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997) (citing *Diaz v. Sec'y of Health & Hum. Servs.*, 898 F.2d 774, 778 (10th Cir. 1990). Where there is inconsistency in the medical evidence requiring resolution, or where the medical evidence in the record is insufficient to allow the ALJ to make a determination on the claim, a

7

consultative examination may be required. 20 C.F.R. § 416.919a(b). An ALJ may also purchase a consultative examination to secure "the additional evidence needed [that] is not contained in the records of your medical sources." *Id*. § 416.919a(b)(1).

It is the ALJ's responsibility to ensure that "an adequate record is developed during the disability hearing consistent with the issues raised." *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir.2004)). As explained by the Tenth Circuit, "after the claimant satisfies her burden to show a reasonable possibility of a severe impairment, the ALJ bears responsibility to order a consultative examination if it is necessary to resolve the impairment issue." *Harlan v. Astrue*, 510 Fed. App'x 708, 713, 2013 WL 470489 at *4 (10th Cir. 2013); *see Hawkins*, 113 F.3d at 1167 (once the claimant has presented evidence suggestive of a severe impairment, it "becomes the responsibility of the ALJ to order a consultative evaluation if such an examination is necessary or helpful to resolve the issue of impairment.").

In this case, the plaintiff's counsel sought to develop the record as to the plaintiff's alleged borderline intellectual functioning, either through the admission of Dr. Gordon's 2017 evaluation or through a new consultative examination with IQ testing. Her counsel cited Dr. Gordon's February 2017 consultative evaluation finding that the plaintiff has a "full-scale IQ of 69 and that the diagnosis was mild mental retardation." (R. 42).

Although the ALJ denied both requests, the record does include the October 9, 2019, administrative findings of state agency medical consultant Jason Gunter, Ph.D., who reviewed the evidence from the plaintiff's prior claim and current claim for supplemental social security income. Dr. Gunter noted that Dr. Gordon's February 2017 consultative

8

psychological evaluation showed that the plaintiff has a full-scale IQ of 69. (R. 90). In addition, he noted that the plaintiff tested at a second-grade level for spelling, a third-grade level for arithmetic, and a fourth-grade level for reading. *Id*. Based on this information, Dr. Gunter found that the plaintiff has the severe impairment of borderline intellectual functioning. *Id*.

Thus, the ALJ was confronted with evidence indicating a "reasonable possibility" that the claimant has a severe mental or intellectual impairment. Moreover, additional evidence—either through the admission of Dr. Gordon's evaluation or development of new evidence, or both—could serve to affirm or discredit the plaintiff's alleged intellectual impairment. As such, the ALJ erred in refusing to consider or obtain further evidence as to this issue.

Compounding the error, the ALJ disregarded Dr. Gunter's finding of borderline intellectual functioning by explaining that she did "not find any support for that in the medical evidence of the record, as the determination referred to an older consultative examination that was considered in the previous ALJ decision and the report is not in the current file." (R. 27). However, as noted, the plaintiff's counsel sought to include Dr. Gordon's February 2017 evaluation, which *would have* supported Dr. Gunter's findings. Thus, in denying that request and the plaintiff's request for a psychological consultative examination, the ALJ effectively ensured the absence of evidence in the record to support Dr. Gunter's consultative finding of borderline intellection functioning.

This error requires remand. The ALJ may not properly rely on an absence of evidence as to an impairment that stemmed from her own decisions to limit the record as

9

to that very issue. Notably, the Commissioner's policy manual instructs that "IQ scores stabilize after age 16 and are generally considered current after that time." Program Operations Manual System (POMS) DI 24583.055(I)(7). Here, the plaintiff was an adult in her thirties when she was examined by Dr. Gordon in 2017. Thus, there is also little, if any, merit to the ALJ's contention that Dr. Gordon's examination findings were somehow outdated two years later.

Because the record was not adequately developed as to plaintiff's intellectual limitations, the Court cannot find that substantial evidence supports the ALJ's decision. Accordingly, the case must be remanded for the ALJ to further develop the record on the issue of the plaintiff's intellectual impairment.

Because the proceedings on remand could alter the ALJ's findings at step four, the Court will not opine here as to whether the ALJ erred at step five.

**V.     Conclusion**

For the reasons set forth above, the Court finds the ALJ did not adequately develop the record in relation to the plaintiff's intellectual functioning. On remand, the ALJ should develop the record as it relates to the plaintiff's intellectual functioning and consider whether a consultative examination is necessary for reviewing the plaintiff's disability claim. Therefore, the decision of the Commissioner finding the plaintiff not disabled for

the relevant period is **reversed** and **remanded** for further proceedings consistent with this opinion.

    **SO ORDERED** this the 30th day of March, 2023.

*Christine D. Little*
Christine D. Little
United States Magistrate Judge